UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-777-H

JEANNE F. CRUTCHFIELD,
by SARA ROGERS CRUTCHFIELD,
next friend and attorney-in-fact                                                                PLAINTIFF

V.

TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO. n/k/a
TRANSAMERICA LIFE INSURANCE
CO.                                                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff brought this lawsuit to recover the cost of her nursing care under her long-term care insurance policy issued by Transamerica Occidental Life Insurance Company ("Transamerica"). Presently before the Court are Plaintiff's Motion for Partial Summary Judgment on this issue and Defendant's Motion for Summary Judgment on all of Plaintiff's claims. Both motions are fully briefed and the Court will analyze them below.

The central issue disputed is whether Transamerica's Long-Term Care Insurance Policy (the "Policy") covers the care Plaintiff has received at Barton House for Alzheimer's disease. This is a difficult issue because Plaintiff probably would have anticipated coverage in these circumstances. However, the Policy's specific provisions define its coverage in a manner which does not include Barton House. The Court is left to conclude that Kentucky courts would not extend the doctrine of reasonable expectations to control over the Policy's unambiguous definitional provisions.

**I.**

In 1992, Plaintiff purchased the Policy from Defendant, which covers long-term care for

necessary diagnostic, therapeutic, rehabilitative, maintenance, and personal care services. The Policy specifically provides a specific monthly payment as a partial reimbursement for Nursing Home Care, Adult Day Care, and Home Health Care as defined in the Policy. Plaintiff has paid all premiums due under the Policy for the past seventeen years.

In 2009, Plaintiff was diagnosed with Alzheimer's disease and became a full-time patient of Barton House. Barton House is a facility licensed to treat and care for Alzheimer's patients, and it provides 24-hour service with nurses on-duty during day shifts and nurses on-call at all other times. Plaintiff requested benefit payments from Defendant for her care. Defendant denied the request on the basis that Barton House was not a facility covered by the Policy.

Plaintiff then filed this action, alleging that the Policy's Nursing Home Benefits covered her stay and care at Barton House and that Transamerica wrongfully denied those benefits. In her subsequent amended Complaints, Plaintiff alleges that the Policy should cover her care under its Adult Day Care and Home Health Care provisions. She alleges that Defendant's denial of benefits constitutes a breach of the duties of good faith and fair dealing, misrepresentation, and violations of Kentucky's Unfair Claims Settlement Practices Act and Kentucky's Consumer Protection Act.

A motion for summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding on a motion for summary judgment, courts "view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. Of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**II.**

The central focus of the case is Plaintiff's argument that she is entitled to coverage for care she received at Barton House under the Policy's Nursing Home Benefits. The construction of an insurance contract begins with the text of the policy itself. If the words employed in it are clear and unambiguous, the Court must apply the terms as written. *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky.1999); *see Hugenberg v. West American Ins. Co.*, 249 S.W.3d 174 (stating insurance policies should be construed according to the parties' mutual understanding at the time they entered into the contract, deduced from the language of the contract itself). In the absence of ambiguity, a reasonable interpretation of an insurance contract must be consistent with the parties' intent as expressed in the plain language of the contract. *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528 (Ky. 2005).

**A.**

The Policy provides three types of long term care benefits and specifically defines each. The pertinent provisions of the Policy that define the Nursing Home Benefits are as follows:

> <u>Nursing Home Benefit Conditions</u>. To receive Nursing Home Benefits: 1. Your Physician must initially certify that Your treatment is Medically Appropriate. We may require Your Physician to periodically recertify that Your treatment continues to be Medically Appropriate, but not more frequently than once every 3 months; 2. The charges must be incurred while this Policy is in force; and 3. The care or services must be Provided in a Nursing Home. Prior approval of Nursing Home care is not required. However, care received at a nursing facility which is not in full compliance with the definition of a Nursing Home will still meet the requirements of this Policy, but only if Our Personal Care Advisor pre-certifies that the facility substantially complies.
>
> \* \* \*

> <u>Nursing Home</u>. Defined as "A facility, or that part of one, which: 1. is operating under a license issued by the appropriate licensing agency; 2. is engaged in providing, in addition to room and board accommodation, nursing care and related services on a continuing inpatient basis to 6 or more individuals; 3. provides, on a formal prearranged basis, a Nurse who is on duty or on call at all times; 4. has a planned program of policies and procedures developed with the advice of, and periodically reviewed by, at least one Physician; and 5. maintains a clinical record of each patient.

These provisions are quite unambiguous by themselves and their application to the Barton House are equally clear. The Policy makes Nursing Home Benefits available in one of two ways: in a facility that is in strict compliance with the Policy's "Nursing Home" definition or in a nursing facility pre-certified by a Transamerica Personal Care Advisor as substantially complying with the Policy's "Nursing Home" definition.

Barton House does not satisfy the Policy's clear definitional requirements of a "Nursing Home." The parties agree or concede that Barton House lacks "planned procedures developed with the advice of, and periodically reviewed by, at least one Physician." Eric Vadden, Barton House's Administrator, noted this deficiency in a Facility Questionnaire submitted in May 2009. On this basis alone, it fails to meet the definition of a "Nursing Home" contained in the Policy. The parties dispute whether Barton House provides "nursing care . . . on a continuing inpatient basis" or "maintains a clinical record of each patient." Consequently, it is also unclear whether Barton House would substantially comply with the Policy's definitional requirements for a nursing home. Regardless, the Policy unambiguously states that coverage is provided under the substantial compliance provision *only if* pre-certification is sought. Plaintiff does not dispute that she failed to seek pre-certification. This makes her ineligible under the Policy's unambiguous terms.

4

**B.**

Plaintiff argues very persuasively that she reasonably anticipated that the Policy's benefits extended to a facility such as Barton House. To be sure, some of the Policy's more general language could lead a policyholder to expect coverage for virtually any kind of Alzheimer's care. For instance, the Policy states Transamerica "will pay for all levels of care, including Custodial Care." Policy p. 8. Custodial Care, a term which the Policy broadly defines, includes care for "individuals who by reason of age, sickness, disease, or physical or mental infirmity are unable to sufficiently or properly care for themselves." Policy p. 6. The Policy also suggests coverage for any care resulting from Alzheimer's disease. *See* Policy p. 15 ("[T]his Policy WILL cover qualifying stays or care resulting from Alzheimer's disease, or similar forms of senility or senile dementia."). Lastly, Barton House does not fall within any exclusions in the "Nursing Home" definition. *See* Policy p. 7 (stating a Nursing Home "is NOT a place that is primarily used for rest; for the care and treatment of mental diseases or disorders, drug addiction or alcoholism; for day care or for educational care; or a retirement home or community living center").

Indeed, Barton House is a facility specifically geared toward Alzheimer's care. Were this Policy drafted today, places like Barton House would likely be covered. However, such specialized living facilities did not exist in 1992 and thus could not be expressly provided for. Plaintiff believed when buying this Policy it would cover any treatment for Alzheimer's and certainly treatment at a facility such as Barton House. Not only does the Policy ostensibly cover Alzheimer's care, the "Nursing Home" definition aims to exclude only facilities mostly identified as retirement communities. These arguments have a strong appeal, particularly if the interplay between the

specific definitional terms and more general terms of the Policy create an ambiguity or uncertainty with respect to coverage.

C.

After carefully considering the arguments summarized above, as well as others, the Court cannot conclude that the Policy is ambiguous so to apply the doctrine of reasonable expectations in these circumstances.

Under Kentucky law, if an insurance policy is susceptible to two reasonable interpretations, a court could resolve the ambiguity in favor of the insured. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky.1994). However, in harmonizing apparently conflicting provisions, specific clauses in insurance policies control general claims. *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W. 3d 318, 323 (Ky. 2010); *see also* Couch on Insurance 3d § 22.2 (2010) ("A special stipulation, clause, or word will control a general one, especially if it creates an exception to the general clause."). While courts can construe uncertain and ambiguous insurance provisions in favor of the insured's reasonable expectation, it cannot extend insurance coverage beyond any clear and unambiguous limit. *State Farm Mut.*, 324 S.W. 3d at 322.

Here, the Policy specifically describes two avenues for policy holders to receive Nursing Home Benefits: by receiving care at a "Nursing Home," as defined in the Policy; or by getting pre-certification from a Transamerica Personal Care Advisor for facilities that substantially comply with the Policy's "Nursing Home" definition. The application of this definition does not involve some sort of technical, legalistic or overly complex means of denying coverage. *Brown v. Indiana Ins. Co.*, 184 S.W.3d at 540.

Though the Policy states the intention of covering care for Alzheimer's, it conditions this intent by stating that only *qualifying* care will receive prescribed benefits. The term "Custodial Care" is a general term used in the Policy, but is not used to define coverage, such as the term "Nursing Home." The unanticipated creation of specialized Alzheimer's facilities does not change the result that the facility plainly falls outside of the Policy's parameters. The Court finds no ambiguity in the Policy because the specific provisions limiting coverage control over the more general provisions. The reasonable expectation doctrine is thus inapplicable. Accordingly, the Court holds the Plaintiff's care at Barton House is not covered under the Policy's Nursing Home Benefits.

### III.

The remainder of the Policy issues are more easily resolved. Plaintiff alleges that she may be entitled to benefits for her stay at Barton House under the provisions of her policy for Adult Day Care Benefits or Home Health Care Benefits. Applying the same rules of construction discussed above, Plaintiff's care at the Barton House is not covered by either provision. The Policy unambiguously provides that the insured must notify Transamerica in writing when there is a claim for benefits. In this case, Plaintiff never requested Adult Day Care or Home Health Care Benefits for her stay at Barton House.

### IV.

Plaintiff also asserts three different theories of bad faith against Defendant in denying her coverage under the Policy: the Kentucky's Unfair Claims Settlement Practices Act (KRS § 304.12-230), the Kentucky's Consumer Protection Act (KRS § 367.170) and common law breach of the duty of good faith and fair dealing. "A single test under Kentucky law exists for the merits of bad-

faith claims, whether brought by a first- or third-party claimant or brought under common law or statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2011). Under Kentucky law, an insured must prove the following three elements to succeed on a claim for bad faith: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Fed. Kemper Ins. Co. v. Hornback,* 711 S.W.2d 844, 847 (Ky. 1986). Because the Court finds that Plaintiff's care at the Barton House is not covered under the Policy, Plaintiff fails to satisfy the first element of her bad faith claims. Accordingly, there is no bad faith cause of action, either at common law or by statute.

**V.**

Plaintiff's final claim alleges that Defendant violated KRS § 304.12-010 and KRS §304.12-020 which prohibit deceptive practices within insurance businesses. Plaintiff argues the Policy is misleading in that it appears to provide coverage for Alzheimer's care at a facility like Barton House. As discussed above, the Policy unambiguously states it will only cover *qualifying* stays resulting from Alzheimer's disease. To be a qualifying stay, it must be in a facility that satisfies the Policy's "Nursing Home" definition or some other coverage provision.

Between the time the Policy was sold and today new kinds of care have developed which the parties did not entirely anticipate. However, this does not make the Policy as a whole misleading. For these reasons, Plaintiff's claim that Defendant engaged in unfair or deceptive practices in the insurance business fails.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is SUSTAINED and all Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc:	Counsel of Record